IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DOMINIC EUGENE FOOTE,           )
                                )
          Petitioner,           )
                                )
     v.                         )     1:14CV877
                                )
GEORGE T. SOLOMON,              )
                                )
          Respondent.           )


## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("the Petition"). (Docs. 2, 3.) Respondent has filed an Answer (Doc. 5), a Motion for Summary Judgment (Doc. 6), and a Brief in Support of the Motion for Summary Judgment (Doc. 8). Petitioner has filed a Response (Doc. 9). Respondent's motion is now ripe for adjudication, and for the reasons that follow, this court will grant the motion.

## I.   BACKGROUND

On September 19, 2012, Petitioner was convicted by a jury of second-degree murder and felony death by motor vehicle in the

Superior Court of Rockingham County. (Petition (Doc. 2) at 1-2;[1] Respondent's Supp. Br. ("Respondent's Br."), Ex. 2 (Doc. 8-3) at 11-16.) He was sentenced to concurrent terms of 200-249 and 35-51 months of imprisonment. (Id. at 13-16.) Petitioner filed a direct appeal and the North Carolina Court of Appeals found no error in Petitioner's second degree-murder conviction and sentence, but vacated the felony death by motor vehicle conviction, and remanded for resentencing. State v. Foote, No. COA13-334, 2013 WL 5629442, at *1 (N.C. Ct. App. Oct. 15, 2013) (unpublished).

Consequently, on January 1, 2014, the trial court arrested judgment on the death by motor vehicle charge, as per the opinion of the North Carolina Court of Appeals, and left the second-degree murder conviction to remain. (Respondent's Br., Ex. 2 (Doc. 8-3) at 43.) On July 17, 2014, Petitioner filed a Motion for Appropriate Relief ("MAR") in Superior Court, Rockingham County. (Id., Ex. 5 (Doc. 8-6).) It was summarily denied on August 11, 2014, for presenting "no probable grounds

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

for the relief."[2] (Petitioner's Br. in Supp. of 2254 Petition ("Petitioner's Br.") (Doc. 3) at 10.)  On September 22, 2014, Petitioner filed a petition for writ of certiorari with the North Carolina Court of Appeals, which was denied on September 30, 2014.  (Respondent's Br., Ex. 6 (Doc. 8-7); Petitioner's Br. (Doc. 3) at 11.)  Petitioner's federal habeas Petition was signed on October 14, 2014, and filed with this court on October 20, 2014. (Petition (Doc. 2).)

## II   PETITIONER'S CLAIMS

Petitioner contends: (1) he was incriminated by compelled testimonial communication from his medical records; (2) the jury was charged with an impermissible permissive presumption on the element of malice; (3) ineffective assistance of trial counsel and of appellate counsel; and (4) the state failed to disclose a state witness's pending drug offenses in the same jurisdiction when such disclosure could have been used to impeach his credibility.  (See id. at 5-11; Petitioner's Br. (Doc. 3).)

---

[2] Even though the MAR court's order was a summary adjudication, the deferential standard of review described below is still applicable here.  See Harrington v. Richter, 562 U.S. 86, 98-99 (2011); see also Hartman v. Lee, 283 F.3d 190, 194 (4th Cir. 2002) (noting that even though state court may not state reasons for decision on merits, decision is still entitled to deference if independent review of law reveals that result meets standards established by Section 2254(d)).

- 3 -

III. **FACTUAL BACKGROUND**

The North Carolina Court of Appeals summarized the facts

from Petitioner's case as follows:

> The State's evidence tended to show that about
> midnight on 24 October 2010, defendant picked up
> Douglas Rontay Clark (the victim), Jamal Stewart
> (Stewart), and Timothy Lee Dalton (Dalton) in a Dodge
> Durango. Three female passengers were already in the
> vehicle. Stewart testified that defendant was "driving
> crazy," and "everybody in the car was like, slow down,
> and [defendant] was like, all right, I got this. So
> he kept speeding." At one point there was an "18-
> wheeler on the right and a 18-wheeler on the left, and
> he went through them speeding[.]" Dalton also
> testified that defendant was "driving fast" and
> "un-regular," even playing "chicken" with a tractor
> trailer. Dalton said, "I'm a grown man, and I said
> stop." Additionally, Deana Meeks, the front-seat
> passenger, testified that defendant was speeding.

> Ultimately, defendant lost control of the
> vehicle, flipped it, and crashed on the side of the
> road. Defendant and the victim were thrown from the
> vehicle, and the victim died as a result of
> complications from blunt force trauma to the head and
> chest.

> Following the collision, defendant was
> transported to Morehead Memorial Hospital, where he
> was treated by emergency room physician Dr. Paul
> McGuire. At trial, Dr. McGuire was tendered as an
> expert in emergency medicine. Dr. McGuire testified
> that he ordered a blood panel and a urinalysis to aid
> in his treatment of defendant. The results indicated
> that defendant had a blood alcohol level of 175
> milligrams per deciliter and he tested positive for
> benzodiazepines and cannabinoids. Dr. McGuire
> concluded that the presence of alcohol,
> benzodiazepines, and cannabinoids would likely impair
> a person.

The State tendered Paul Glover, research scientist for the Department of Health and Human Services, as an expert witness in the fields of blood alcohol testing, blood alcohol physiology, pharmacology and the effects of drugs on humans. Mr. Glover testified that defendant's blood alcohol level was .14 grams per 100 milliliters, the measure required by North Carolina Statute. Additionally, he also concluded that the combination of alcohol, cannabinoids, and benzodiazepines would likely impair a person.

Trooper Darren Yoder of the North Carolina Highway Patrol was tendered as an expert witness in the field of automobile crash collision reconstruction. Trooper Yoder responded to the collision at approximately 2:53 AM. Trooper Yoder did not perform an accident reconstruction but did complete an accident investigation report. He estimated that the vehicle was traveling at approximately 80 m.p.h. immediately preceding the collision. The State also called Officer Elizabeth Tilley and Trooper Mark Rakestraw to testify to the circumstances of defendant's prior arrests for driving while impaired, which resulted in two separate convictions.

<u>Foote</u>, 2013 WL 5629442, at *1-2.

IV.  **STANDARD OF REVIEW**

Where a state trial court adjudicated a petitioner's claims on their merits, this court must apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to such claims. That statute precludes habeas relief in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme

- 5 -

Court or the state court decision was based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court.  Williams v. Taylor, 529 U.S. 362, 405 (2000).  A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."  Id. at 407.  "Unreasonable" does not mean just "incorrect" or "erroneous," and the court must judge the reasonableness from an objective standpoint.  Id. at 409-11.  State court factual findings are presumptively correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  This standard applies below.

V.  **DISCUSSION**

A.  **Claim One**

Petitioner's first claim is that he was incriminated by his own compelled testimonial communication from his own medical

- 6 -

records.[3]  (Petition, Ground One (Doc. 2) at 5; Petitioner's Br.

(Doc. 3) at 6-7.)  Petitioner raised the substance of this claim

on appeal and it was denied as follows:

> Defendant argues that the trial court erred in
> allowing testimony based upon hospital records in
> violation of the Confrontation Clause of the United
> States Constitution because those who had performed
> the tests were not available for cross-examination.
> We disagree.
>
> Defendant did not object to the testimony of Dr.
> McGuire or Mr. Glover at trial and has therefore
> waived his right to argue this issue on appeal.
> However, the North Carolina Supreme Court "has elected
> to review unpreserved issues for plain error when they
> involve either (1) errors in the judge's instructions
> to the jury, or (2) rulings on the admissibility of

---

[3] Petitioner incorporates by reference his state court MAR in
each of his federal habeas claims addressed herein.
(Petitioner's Br. (Doc. 3) at 6-9.)  Despite this, Petitioner
has failed to include a copy of his state court MAR with any of
his pleadings in this proceeding.  Respondent, on the other
hand, has included a copy of Petitioner's state court MAR,
though it appears to omit roughly five pages of Petitioner's
81-page MAR.  (Respondent's Br., Ex. 5 (Doc. 8-6).)  Petitioner
faults Respondent for this omission. (Petitioner's Resp. (Doc.
9) at 1.) Regardless, the court need not pursue this matter
further. First, the burden lies with Petitioner to state and
prove his federal habeas claims, and not with Respondent.
Second, Petitioner has had at least eight months to remedy any
deficiency in his pleadings, but has not. (Id. filed 12/22/14.)
Third, Petitioner explains that the missing pages contain
"[b]asically the entire Claim 4 of Issue I [of the]
Confrontation Clause argument . . . ." (Id. at 1.)  However, as
explained above, Petitioner's Confrontation Clause claim lacks
merit and additional argumentation will not change this.  Last,
the court has reviewed the state court MAR contained in the
record and has considered it, when proper, throughout the
remainder of this Memorandum Opinion and Order.  None of
Petitioner's claims has merit, factually or legally, under the
relevant standard.

evidence." State v. Gregory, 342 N.C. 580, 584, 467
S.E.2d 28, 31 (1996). Plain error arises when the
error is "'so basic, so prejudicial, so lacking in its
elements that justice cannot have been done[.]'" State
v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)
(quoting United States v. McCaskill, 676 F.2d 995,
1002 (4th Cir. 1982), cert. denied, 459 U.S. 1018, 74
L.Ed.2d. 513 (1982)). "Under the plain error rule,
defendant must convince this Court not only that there
was error, but that absent the error, the jury
probably would have reached a different result."
State v. Jordan, 333 N.C. 431, 440, 426 S.E.2d 692,
697 (1993). Accordingly, we will review this issue
for plain error.

    Under Crawford v. Washington, our Supreme Court
held that "[w]here testimonial evidence is at issue,
[] the Sixth Amendment demands what the common law
required: unavailability and a prior opportunity for
cross-examination." 541 U.S. 36, 68, 158 L.Ed.2d 177,
203 (2004). Conversely, "[w]here nontestimonial
hearsay is at issue, it is wholly consistent with the
Framers' design to afford the States flexibility in
their development of hearsay law . . . as would an
approach that exempted such statements from
Confrontation Clause scrutiny altogether." Id.

    In Crawford, the Supreme Court specifically found
that most of the hearsay exceptions cover statements
that are not testimonial and therefore do not present
a Confrontation Clause problem. Id. at 56, 158 L.Ed.2d
at 196. Business records are specifically listed as
an example of such an exception. Id. "Business
records are defined to include the records of
hospitals." State v. Miller, 80 N.C. App. 425, 428,
342 S.E.2d 553, 555 (1986). In Sims v. Charlotte
Liberty Mut. Ins. Co., 257 N.C. 32, 35, 125 S.E.2d
326, 328-29 (1962), our Supreme Court specifically
applied the business records exception to hospital
records.

    Here, defendant challenges the expert testimony
pertaining to the results of his blood test and
urinalysis. However, defendant's test results,
although hearsay, are admissible under the business

- 8 -

records exception to the hearsay rule upon authentication by the proponent. <u>Miller</u>, 80 N.C. App. at 428, 342 S.E.2d at 555. Authentication may occur "by the testimony of the custodian or <u>other qualified witness</u>, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." <u>Id.</u> at 429, 342 S.E.2d at 556 (citation omitted) (alteration in original).

The record reflects that Dr. McGuire ordered the tests to help him assess defendant's condition, and the results were recorded in defendant's hospital records. As such, we hold that defendant's hospital records constitute a record made in the usual course of business and are therefore exempted from the rule against hearsay. Moreover, the records were properly identified and authenticated by Dr. McGuire, a qualified witness, who testified that he ordered the tests pursuant to standard hospital procedure.

Although the hospital records were used in defendant's criminal prosecution, they were not prepared for that purpose. Instead, they were prepared for purposes of treating the patient, not for evidentiary purposes in preparation for trial. While the experts may have referenced the test results in their testimony, such testimony poses no per se Confrontation Clause problem. <u>Crawford</u> distinctly recognizes that business records are not testimonial. <u>Crawford</u>, 541 U.S. at 56, 158 L.Ed.2d at 196.

Additionally, because the test results were an inherently reliable source of information and because defendant had the opportunity to cross-examine the experts at trial, the trial court did not err in admitting the testimony of either expert. <u>See</u> <u>State v. Huffstetler</u>, 312 N.C. 92, 107-09, 322 S.E.2d 110, 120-21 (1984) (holding that the defendant was not deprived of his Sixth Amendment right to confront his accusers when the trial court allowed an expert witness to testify to the results of blood tests that he did not perform because (1) the test results were inherently reliable, and (2) the defendant had the opportunity to cross-examine the witness). Accordingly, we hold that defendant's right to

confront his accuser guaranteed by the Sixth Amendment
was not denied.

Foote, 2013 WL 5629442, *2-3.

Having reviewed both the issue raised here by Petitioner,
and the analysis of the North Carolina Court of Appeals, the
court concludes that the North Carolina Court of Appeals did not
contradict or unreasonably apply Crawford or its progeny in
denying Petitioner's parallel claim on direct appeal.  As
explained above, the evidence of - and related to - the results
of the blood panel test and urinalysis, ordered by the emergency
room physician in order to properly treat Petitioner for his
injuries on the night of the incident, was non-testimonial.
Medical reports prepared for treatment purposes obviously are
not, like forensic reports, prepared for the very purpose of
establishing or proving some fact at trial, and therefore do not

implicate the Confrontation Clause.[4]  The resolution of this

matter by the state is neither contrary to nor an unreasonable

application of clearly established federal law nor was it based

---

[4] See, e.g., Michigan v. Bryant, 562 U.S. 344, 362 n.9
(2011) (statements made for purpose of medical diagnosis or
treatment are "by their nature, made for a purpose other than
use in a prosecution"); Melendez-Diaz v. Mass., 557 U.S. 305,
312 n.2 (2009) ("[M]edical reports created for treatment
purposes . . . would not be testimonial under our decision
today."); Giles v. Cal., 554 U.S. 353, 376 (2008) ("[O]nly
testimonial statements are excluded by the Confrontation Clause.
Statements to . . . physicians in the course of receiving
treatment would be excluded, if at all, only by hearsay
rules."); Ascencio v. Spearmen, No. C 13-3433 PJH (PR), 2014 WL
6706014, at *6 (N.D. Cal. Nov. 26, 2014) ("The state court
opinion was not contrary to Supreme Court authority as the
records were prepared for medical treatment."); Tatum v.
McQuiggin, No. 5:10-CVv-11383, 2011 WL 576751, at *5-6 (E.D.
Mich. Feb. 9, 2011) (finding that business records and medical
reports created for treatment purposes do not implicate the
Confrontation Clause); see also United States v. DeLeon, 678
F.3d 317, 321-24 (4th Cir. 2012), cert. granted, judgment
vacated on other grounds, ____ U.S. ____, 133 S. Ct. 2850 (2013)
(admission of evidence of stepson's statements describing his
defendant-stepfather's disciplinary methods to social worker
made several months before the stepson died did not implicate
the Confrontation Clause because they were made for purposes of
formulating a family treatment plan and were not testimonial).

- 11 -

on an unreasonable determination of the facts.[5]

**B.   Claim Two**

Petitioner next asserts that the jury was charged with an impermissible permissive presumption on the element of malice. (Petition (Doc. 2), Ground Two at 6-7; Petitioner's Br. (Doc. 3) at 7-8.)  He contends that "no rational common sense connection exists between the 'basic facts' proved and the 'elemental fact' of malice."  (Petitioner's Br. (Doc. 3) at 7.)  For the following reasons, this claim fails.

The Fourth Circuit, referencing Supreme Court law, has instructed that:

> A permissive inference contains both a basic fact and an elemental fact.  The basic fact is what the prosecution must first prove to allow the permissive inference.  The elemental fact is a fact critical to proving an element of the charged crime. When the prosecution proves the basic fact contained in the permissive inference, the jury is permitted, but not required, to infer proof of the elemental fact.  See

---

[5] To the extent Petitioner alleges a Fourth Amendment claim, it is addressed below in the court's assessment of Claim Three. Additionally, the Supreme Court has held that the Fifth Amendment privilege against self-incrimination does not extend to the results of blood tests, so any claims along those lines must fail as well.  See Schmerber v. Cal., 384 U.S. 757, 761, 764-65 (1966) (concluding that the Fifth Amendment did not bar blood-alcohol analysis results, as results were not testimonial); United States v. Jackson, Nos. 94-5338, 94-5440, 1995 WL 331080, at *4 (4th Cir. June 2, 1995) (unpublished) ("[T]he Fifth Amendment privilege against self-incrimination does not extend to the results of blood tests.") (citation omitted).

> County Court of Ulster County, New York v. Allen, 442
> U.S. 140, 157, 99 S. Ct. 2213, 60 L.Ed.2d 777 (1979).
> "Because this permissive presumption leaves the [jury]
> free to credit or reject the inference and does not
> shift the burden of proof, it affects the application
> of the 'beyond the reasonable doubt' standard only if,
> under the facts of the case, there is no rational way
> the [jury] could make the connection permitted by the
> inference." Id.

Daniel v. W. Va., No. 97-6806, 1999 WL 713865, at *4 (4th Cir.

Sept. 14, 1999) (unpublished).

Here, there was no impermissible burden shifting

instruction given in this case as to malice or otherwise.[6]  This

is because there is a general presumption that juries follow

their instructions which Petitioner has failed to overcome with

his vague and conclusory allegations of impermissible burden

shifting.  See, e.g., Penry v. Johnson, 532 U.S. 782, 799 (2001)

(citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)).

Additionally, the evidence at Petitioner's trial, including his

prior convictions for driving while impaired, and the

circumstances attendant thereto, were rationally related to

---

[6] (Compare Respondent's Br., Ex. 9 (Doc. 8-10) at 239-59,
241-42, 244, 248 with Gilbert v. Moore, 134 F.3d 642, 647 (4th
Cir. 1998) (observing that jury instruction that "malice is
implied or presumed from the willful, deliberate and intentional
doing of an unlawful act without just cause or excuse"
unconstitutionally shifted the burden to the defendant with
regard to an essential element of the crime of murder).)

prove malice (for example, by demonstrating that Petitioner knew of the dangers of driving while impaired, but disregarded them) and there was no improper burden shifting.

Petitioner may also be contending that the trial court's admittance of prior instances of driving while impaired in violation of North Carolina Rule of Evidence 404(b) should not have been admitted into evidence.  If Petitioner is making this argument, it fails, too.  First, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). It is only in circumstances impugning fundamental fairness or infringing constitutional protections that a federal question is presented. Grundler v. N.C., 283 F.2d 798, 802 (4th Cir. 1960).  Such circumstances are absent here.

Moreover, the North Carolina Court of Appeals considered the admissibility of this evidence and rejected Petitioner's contention that evidence of his prior driving while impaired convictions was inadmissible to show proof of malice:

> On 6 September 2008, Trooper Rakestraw found defendant "passed out" in the driver's seat of his vehicle at approximately 4:00 AM after crashing into a

- 14 -

nearby yard. Trooper Rakestraw testified that defendant appeared appreciably impaired; he detected the odor of alcohol, had glassy eyes, slurred speech, and was unsteady on his feet. Officer Tilley testified that she stopped defendant on 11 October 2008, after observing his vehicle swerve into her lane of travel before running a red light. Upon stopping defendant, she detected the odor of alcohol on his breath. She also noted his red, glassy eyes, nervous demeanor, and saw that he was unsteady on his feet. She also concluded that defendant was appreciably impaired.

As discussed above, the circumstances of a prior arrest and the current offense need only support a reasonable inference that the same person committed the offenses. <u>See</u> <u>id.</u> Such inference is plausible. Here, passengers testified that defendant was speeding, played chicken with an eighteen-wheeler, and drove recklessly. At the hospital, Dr. McGuire detected the odor of alcohol on defendant. Thus, the circumstances of each arrest show that defendant 1) failed to maintain control of his vehicle, 2) drove recklessly, 3) smelled of alcohol, and 4) endangered those traveling on our roadways. We conclude that the trial court did not err; the circumstances of defendant's prior arrests are sufficiently similar to the instant case so as to have probative value.

<u>State v. Foote</u>, 2013 WL 5629442, *4-5. The court notes too that the jury was instructed that this evidence, i.e., the prior driving while impaired convictions, could only be considered to the extent it related to the element of malice. (Respondent's Br., Ex. 9 (Doc. 8) at 194-95.) For all these reasons, any contention by Petitioner that the aforementioned evidence was

somehow not rationally related to the element of malice is without merit.[7]

## C. **Claim Three**

Petitioner next asserts ineffective assistance of trial and appellate counsel. (Petition (Doc. 2) Ground Three at 8-9; Petitioner's Br. (Doc. 3) at 8.) To prove ineffective assistance of counsel generally, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he suffered prejudice as result. See Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). Unsupported, conclusory allegations do not entitle a petitioner to relief. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). A petitioner bears the burden of affirmatively showing deficient performance. See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). Prejudice requires a showing of a reasonable probability

---

[7] See, e.g., Bauberger v. Haynes, 632 F.3d 100, 102 (4th Cir. 2011) ("At trial the government introduced Bauberger's troubled driving record. He had two prior driving-while-impaired ('DWI') convictions, as well as a reckless driving conviction and other driving offenses."); United States v. Tan, 254 F.3d 1204, 1210 (10th Cir. 2001) ("[A] number of state courts have addressed this issue and have also held prior drunk driving convictions to be properly offered under Rule 404(b) for the purpose of proving malice in second degree murder prosecutions arising from drunk driving accidents.") (collecting cases).

that but for counsel's unprofessional errors, the result of the proceeding would have differed. Strickland, 466 U.S. at 694. The Strickland standard described above also applies to claims that appellate counsel was ineffective. See Lawrence v. Branker, 517 F.3d 700, 708-09 (4th Cir. 2008).

Here, Petitioner asserts that trial counsel "failed to object, failed to know crucial facts of case law, failed to timely object, failed to sufficiently object, failed to cross-examine, failed to suppress, failed to impeach and when he failed to advise his client."  (Petitioner's Br. (Doc. 3) at 8.) These claims all fail for being vague, conclusory, and unsupported.  See Nickerson, 971 F.2d at 1136.  Petitioner asserts too that appellate counsel "failed to rebut the states' argument that the medical records were testimonial." (Petitioner's Br. (Doc. 3) at 8.)  As explained above, however, the use of Petitioner's medical records in this case does not offend the Confrontation Clause.

Petitioner also incorporates by reference into his Petition (Doc. 2) the arguments he set forth in his state court MAR. (Petitioner's Br. (Doc. 3) at 8 referencing Respondent's Br., Ex. 5 (Doc. 8-6).)  However, for the reasons explained below, the state MAR court did not err, much less act contrary to or

unreasonably apply clearly established federal law, when it concluded there had been no ineffective assistance.

First, Petitioner faults trial counsel for failing to object to the testimony of Dr. McGuire, the emergency room physician who treated Petitioner, and Paul Glover, a state scientist. (Respondent's Br., Ex. 5 (Doc. 8-6) at 44.) Petitioner specifically contends that counsel should have objected to their testimony as to the contents of his medical records. (Id.) As explained above, however, the contents of the medical records discussed above do not offend the Confrontation Clause. Moreover, as explained below, Petitioner has failed to demonstrate that any objection to the testimony of either Dr. McGuire or Mr. Glover had any likelihood of success.

Specifically, McGuire testified at trial that the combination of alcohol, benzodiazepines, and cannabinoids would be enough to impair a person. (Id., Ex. 9 (Doc. 8-10) at 99-100.) At trial, Dr. McGuire was qualified as an expert witness in emergency medicine. He was also the doctor on call in the emergency room when Petitioner was admitted for treatment and was the doctor who ordered that Petitioner's blood be drawn, as per the standard treatment for trauma patients under these circumstances. (Id. at 94-98.) He also ordered a urinalysis. (Id. at 99.) Petitioner's blood tested positive for alcohol and

- 18 -

his urine for benzodiazepines and cannabinoids.  (Id. at 98-99.)
Dr. McGuire testified that the combination of the three would
"have increased sedation" and would, based on his training and
experience, be enough to impair a person.  (Id. at 99-100.)
Dr. McGuire also noted in the medical records that Petitioner's
"general appearance" was "[i]ntoxicated" and that he smelled of
alcohol.  (Id. at 101, 141.)  Dr. McGuire was therefore
qualified to speak hypothetically[8] as an expert witness and to
speak as an eyewitness as to Petitioner's appearance.  There is
no reason to believe that the objections Petitioner faults
counsel for omitting as to Dr. McGuire's testimony would have
been sustained had they been raised.

Additionally, Mr. Glover testified as an expert witness for
the state in the field of blood alcohol testing and the effects
of drugs on human performance and behavior.  (Id. at 174.)  He
testified that he reviewed Petitioner's medical records and that

---

[8] Petitioner faults counsel for failing to object to what he
characterizes as the state's "hypothetical questions" directed
to various expert witnesses and for failing to object to their
subsequent answers. Nevertheless, "[i]t has long been accepted
that an expert witness may voice an opinion based on facts
concerning the events at issue in a particular case even if the
expert lacks first-hand knowledge of those facts." Williams v.
Illinois, 567 U.S. ____, ____, 132 S. Ct. 2221, 2234 (2012)
("There is a long tradition of the use of hypothetical questions
in American courts.")  The court notes too that Petitioner may
also be contesting the sufficiency of the evidence on impairment
here, and elsewhere in his pleadings, and the court considers
this argument in greater detail below.

the results from Petitioner's blood and urine test indicated the presence of alcohol ("0.14 grams per 100 milliliters"), benzodiazepines, and cannabinoids, and that the effect of these drugs together would result in "severe impairment" and would impact one's ability to drive a car. (Id. at 179-86.) Mr. Glover testified that based on his training, experience, and education, he concluded that a person with this concentration (the concentration Petitioner demonstrated) of alcohol, benzodiazepines, and cannabinoids in their system would "be impaired." (Id. at 186.) As with the testimony of Dr. McGuire, there is no reason to believe that any objection to the testimony of Mr. Glover would have been sustained.

Second, Petitioner faults trial counsel for not objecting to Trooper Darren Yoder's testimony that the vehicle was traveling at least 80 miles an hour just prior to the accident. (Respondent's Br., Ex. 5 (Doc. 8-6) at 46.) Petitioner asserts that this was error because Trooper Yoder did not conduct an accident reconstruction. (Id.) This argument has no merit because there is no reason to believe that any such objection would have been sustained and, in fact, the North Carolina Court of Appeals reached a similar conclusion:

> At trial, Trooper Yoder was tendered, without objection, as an expert witness in the field of automobile collision reconstruction. The record

> indicates that he successfully completed a collision
> reconstruction course and was certified in advanced
> traffic crash investigation. Here, Trooper Yoder did
> more than review the accident investigation report
> prior to testifying, because he in fact wrote the
> report. As such, defendant has failed to convince us
> that Trooper Yoder's testimony as to the speed of the
> vehicle failed to surpass the threshold of
> admissibility under N.C. Gen. Stat. § 8C-1, Rule
> 702(i). We conclude that the trial court did not err.

Foote, 2013 WL 5629442, at *4-5. The North Carolina Court of

Appeals did not err, much less act contrary to or unreasonably

apply clearly established federal law in this regard, nor did

the state MAR court err in rejecting Petitioner's ineffective

assistance claim based on the same.

Third, Petitioner faults trial counsel for failing to be

aware of the relevant case law on impairment, an element to his

second-degree murder conviction. (Respondent's Br., Ex. 5 (Doc.

8-6) at 49.) The gravamen of this contention appears to be that

counsel was so ignorant as to what constituted impairment as to

fail to more vigorously seek dismissal of the criminal charges

at the close of the evidentiary phase of the trial. (Id. at

49-53.) This argument lacks merit.

Specifically, a federal court reviewing a habeas claim of

insufficient evidence must determine whether, after viewing the

evidence in the light most favorable to the state, any rational

trier-of-fact could find the essential elements of the crime

- 21 -

beyond a reasonable doubt. See Wright v. West, 505 U.S. 277,
284 (1992); Jackson v. Virginia, 443 U.S. 307, 319 (1979). Here,
ample evidence (described above) permitted a reasonable
inference that Petitioner drove while impaired by drugs and
alcohol. Specifically, taken in the light most favorable to the
state, a rational trier of fact could find impairment here,
where drugs and alcohol were found in Petitioner's system soon
after the accident, during which he was driving recklessly and
erratically, and Petitioner smelled of alcohol in the hospital.
See, e.g., State v. Vassey, 154 N.C. App. 384, 391, 572 S.E.2d
248, 253 (2002) (concluding that the fact that a motorist has
been drinking, when considered in connection with faulty
driving, such as, following an irregular course on the highway
or other conduct indicating an impairment of physical or mental
faculties, is sufficient prima facie evidence to show impairment
(citation omitted)). Petitioner has failed to demonstrate
ineffective assistance of counsel here.

Fourth, Petitioner faults trial counsel for failing to
object to photographs of the accident scene. (Respondent's Br.,
Ex. 5 (Doc. 8-6) at 53 referencing Ex. 9 (Doc. 8-10) at 131-34.)
Yet, Petitioner himself acknowledges that counsel did indeed
object to the introduction of these photographs, but was
overruled by the trial court. (Id.) Petitioner faults counsel

- 22 -

for not objecting at a different time or in a different manner, yet, given the trial court's overruling of the objection counsel did make, there is no reason to believe that an earlier or different form of the same objection would have reached a different result.

Fifth, Petitioner contests trial counsel's failure to object to a hypothetical question asked of Dr. McGuire. (Respondent's Br., Ex. 5 (Doc. 8-6) at 55-57 referencing Ex. 9 (Doc. 8-10) at 99-100, 224.) Here, as explained earlier, Petitioner has failed to provide any meaningful reason to conclude that the trial court or counsel erred in handling the testimony of Dr. McGuire and so there is no reason to believe that any objection to his testimony would have been sustained. Additionally, to the extent Petitioner contests the sufficiency of the evidence on the element of impairment, that argument lacks merit for reasons described above.

Sixth and seventh, Petitioner faults trial counsel for failing to object to evidence regarding his two prior arrests for driving while impaired or for at least seeking to redact portions of that evidence. (Respondent's Br., Ex. 5 (Doc. 8-6) at 57-60 referencing Ex. 9 (Doc. 8-10) at 195-216.) As explained earlier, however, Petitioner has failed to demonstrate

- 23 -

error under any standard of review regarding his two prior arrests and convictions for driving while impaired.

Eighth, Petitioner faults trial counsel for failing to object to the testimony of Officers Tilley and Rakestraw, the officers who testified as to Petitioner's two prior driving while impaired arrests, which the trial court cautioned could be used, if at all, only as a factor going towards the element of malice, an element necessary to distinguish second-degree murder from manslaughter. (Id. at 59-61 referencing Ex. 9 (Doc. 8-10) 195-216.) Petitioner also faults counsel for failing to cross-examine these witnesses. (Id.) Again, Petitioner fails to set forth any meaningful grounds for objection or for the filing of a pre-trial motion to exclude testimony here, fails to give any justification for sustaining an objection, and fails to explain why or how counsel should have cross-examined the officers. Petitioner's claim is vague, conclusory, unsupported, and speculative and fails for these reasons alone. See Nickerson, 971 F.2d at 1136.

Ninth, Petitioner appears to fault counsel for failing to contest a warrant issued for his medical records. (Respondent's Br., Ex. 5 (Doc. 8-6) at 61.) As explained earlier, Petitioner's blood and urine were tested as part of his treatment at the hospital. Officer Yoder testified that on the night of the

- 24 -

accident, three witnesses told him that Petitioner was driving at a high rate of speed and lost control of the vehicle at the curve. (Id., referencing Ex. 9 (Doc. 8-10) at 140-42.) They were unsure if he had been drinking that night, however, Dr. McGuire spoke with Officer Yoder and indicated that he smelled the odor of alcohol coming from Petitioner's breath, and based on all this he "got a search warrant and did serve that over at the hospital records department." (Id. at 141.) Given that Officer Yoder had probable cause to believe a crime had occurred, there is no reason to believe that had counsel attacked the warrant, he would have been successful.[9]

Tenth, Petitioner faults trial counsel for failing to impeach Jamal Stewart, who, as noted, testified against Petitioner at trial. (Respondent's Br., Ex. 5 (Doc. 8-6) at 61-64 referencing Ex. 9 at 31-54.) Petitioner faults counsel for failing to challenge Stewart's statements that the accident

---

[9] See, e.g., Commonwealth v. Ruey, 586 Pa. 230, 244-53, 892 A.2d 802, 810-16 (2006) (finding probable cause for a search warrant regarding hospital records where defendant received treatment after an accident based upon officer's observations at scene of fatal traffic accident, of half-empty bottle of wine and a partially full bottle of vodka inside defendant's vehicle, and an empty wine bottle on the ground nearby); Thurman v. State, 861 S.W.2d 96, 100 (Tex. App.-Houston [1st Dist.] 1993) (concluding that state had probable cause for search warrant for record of blood test administered by hospital for medical reasons where defendant "had driven his car through a red light at 2:30 a.m., at 60 to 90 miles an hour, had a one-car accident, and smelled of alcohol").

vehicle was gold, even though it was not; that he was on his cell phone, but could still hear statements made by others to "[s]low down"; and that Petitioner drove for a few hours, but later said the drive took only a few minutes. (Id., Ex. 5 at 61-64.)

Petitioner also asserts that approximately three months before the trial, Stewart was charged with misdemeanor and felony drug possession and that he had a prior conviction in 2009 for larceny. (Id.) A search of the public record confirms that Stewart pled guilty to possession of schedule II and schedule VI substances on June 13, 2012, and ultimately received a probationary sentence, but does not confirm the latter allegation of a prior conviction for larceny.[10]

Here, it is sheer speculation[11] that any further cross-examination of Stewart in an effort to impeach his credibility by counsel would have increased the likelihood of a different

---

[10] See North Carolina Department of Public Safety Offender Public Information, available at http://webapps6.doc.state.nc.us/opi/offendersearch.do;jsessionid=144B6C0659358A5F879CD5B491768312.WV6JFHAP56T_512?method=list.

[11] Petitioner speculates that Stewart may have received a more lenient sentence in his criminal matter in return for testifying against him. However, Petitioner provides no evidence in support of this assertion (if it is indeed an assertion), and, in fact, apparently concedes he does not "know for certain" but that it was "possibl[e]." (Docket Entry 8, Ex. 5 at 64.)

verdict.  Many of the purported inconsistencies pointed to by
Petitioner, such as the color of the vehicle, the length of the
drive, and whether Stewart was on the phone, are trivial or
could have been easily explained.  In other words, the
contention that impeachment on these issues increased the
likelihood of a different result at trial is unpersuasive.

Similarly, as for Stewart's alleged criminal record or
pending charges, there is no reason to believe that had it been
made known to the jury, a different result at trial was any more
likely.  Stewart was not a criminal co-defendant who stood to
benefit at sentencing by testifying against Petitioner, but a
witness who testified to an accident in which he was personally
involved.  Moreover, as explained in greater detail below in
Claim Four, the evidence against Petitioner was strong even
absent Stewart's testimony.  The allegations here are
speculative, conclusory, and therefore lack merit.  Nickerson,
971 F.2d at 1136.

Eleventh, Petitioner faults trial counsel for failing to
"[s]ufficiently [a]dvise" Petitioner.  (Respondent's Br., Ex. 5
(Doc. 8-6) at 64.)  Petitioner contends that counsel misadvised
him in telling him that the state could only bring up his prior
criminal record if he testified at trial.  (Id.)  Petitioner
contends further that had he known the state could use his two

prior convictions for driving while impaired at trial, he would have accepted a "more favorable" plea agreement offered by the state. (Id.)  He states further that on the basis of this representation, he declined to testify at his trial.  (Id.)

The Supreme Court has considered whether a criminal defendant can be prejudiced by going to trial rather than accepting a guilty plea, where that decision results from deficient performance of counsel.  See Lafler v. Cooper, 566 U.S. ____, ____, 132 S. Ct. 1376, 1383 (2012).  The Court concluded that "[A] defendant has the right to effective assistance of counsel in considering whether to accept [a plea bargain].  If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in . . . the imposition of a more severe sentence."  Id. at 1387.  Prejudice in the context of a rejected plea bargain requires:

> [A] defendant [to] show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Id. at 1385.  See also Missouri v. Frye, 566 U.S. ____, ____, 132 S. Ct. 1399, 1404 (2012) (addressing ineffective assistance

- 28 -

of counsel claim "aris[ing] in the context of claimed ineffective assistance that led to the lapse of a prosecution offer of a plea bargain, a proposal that offered terms more lenient than the terms of the guilty plea entered later").

Here, Petitioner's allegations in this claim are simply too vague, conclusory, and speculative to proceed further. See Nickerson, 971 F.2d at 1136. Petitioner has entirely failed to explain in even a cursory form what the terms of the alleged plea agreement were except to note that it was "more favorable." "More favorable" is susceptible to many reasonable different interpretations and, consequently, it is impossible for this court to determine the likelihood Petitioner would have accepted any plea agreement under the circumstances of his case given the evidence against him and the amount of time he faced if convicted at trial. Petitioner has also failed to set forth any reason to believe that the court would have accepted the terms of this purported plea agreement or that the conviction or sentence, or both, would have been less severe.

Additionally, Petitioner further asserts he was denied the right to testify. He does not meaningfully set forth what testimony he wanted to provide at his trial and so it is impossible to determine the probability of a different result. Had Petitioner testified, he would have been cross-examined on

- 29 -

his extensive criminal history, which includes felony
convictions for common law robbery, possession with the intent
to sell a schedule II substance, and receiving a stolen
vehicle.[12]  (Respondent's Br., Ex. 2 (Doc. 8-3) at 21.)  See,
e.g., Mills v. United States, Nos. 5:03-CR-249-1-BR, 5:05-CV-
734-BR, 2007 WL 4458304, at *3 (E.D.N.C. Dec. 14, 2007)
(unpublished) ("Had petitioner testified, his multiple
convictions would have been brought to the jury's
attention . . . [this] factor[ ] would likely have significantly
affected petitioner's credibility in the eyes of the jury.").

     Finally, Petitioner faults appellate counsel for failing to
"rebut the State's argument that the medical records [were] non-
testimonial."  (Respondent's Br., Ex. 5 (Doc. 8-6) at 67.)  As
explained above, the use of Petitioner's medical records in this
case did not offend the Confrontation Clause.  Consequently,

---

[12] See North Carolina Department of Public Safety Offender
Public Information, available at
http://webapps6.doc.state.nc.us/opi/offendersearch.do;jsessionid
=144B6C0659358A5F879CD5B491768312.WV6JFHAP56T_512?method=list.

appellate counsel was not constitutionally ineffective.[13]

###### D. **Claim Four**

Petitioner's fourth claim is that the state failed to disclose potentially impeaching evidence that state's witness, Jamal Stewart, had pending drug charges. (Petition (Doc. 2), Ground Four at 10-11; Petitioner's Br. (Doc. 3) at 8-9.)  In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  The prosecutor's duty to disclose exculpatory evidence is applicable even in the absence of a request for the information. United States v. Agurs, 427 U.S. 97, 110-11 (1976). Brady encompasses evidence known to police investigators, even if not known to the prosecutor. Kyles v. Whitley, 514 U.S. 419, 438 (1995).

To successfully show a Brady violation, a petitioner must establish three things.  First, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching."  Strickler v. Greene, 527 U.S. 263,

---

[13] To the extent Petitioner is asserting ineffective assistance of appellate counsel for failing to raise on appeal any of the other issues discussed herein, those claims also fail.  Appellate counsel has no obligation to raise on appeal meritless claims.

281-82 (1999).  Second, the evidence must have been willfully or inadvertently suppressed by the state.  Id. at 282; see also United States v. Stokes, 261 F.3d 496, 502 (4th Cir. 2001). Finally, prejudice against a petitioner must have resulted (i.e., the evidence at issue was "material").  Strickler, 527 U.S. at 282; see also Stokes, 261 F.3d at 502. Evidence is considered "material" and thus subject to Brady disclosure "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  United States v. Bagley, 473 U.S. 667, 682 (1985).

In this case, the state MAR court did not err, much less act contrary to or unreasonably apply clearly established federal law, when it concluded there had been no Brady violation.  First, the evidence in question does not appear particularly favorable to Petitioner, given that there is no evidence that Stewart stood to benefit at sentencing by testifying against Petitioner, but was rather a witness who testified to an accident in which he was personally involved.

Second, the evidence in question was not material. There is no reason to believe that had Stewart's purported criminal record (or his pending charges) been made known to the jury, a different result to Petitioner's trial was any more likely.

- 32 -

There was a great deal of evidence of Petitioner's guilt. For example, in addition to the evidence of drugs and alcohol in his system, Dalton also testified that he told Petitioner to "stop," but that Petitioner was "driving fast" and "un-regular," even playing "chicken" with a tractor trailer. Consequently, even if Stewart's credibility were placed in doubt, there is no reason to believe the trial would have resolved differently. For all these reasons, Petitioner's last claim fails.

## VI. CONCLUSION

None of Petitioner's claims has merit. Petitioner has failed to demonstrate that the state's resolution of these issues was contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts. For the reasons set forth above,

**IT IS HEREBY ORDERED** that Respondent's Motion for Summary Judgment (Doc. 6) is **GRANTED,** that Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 2) is **DENIED,** and that this action is **DISMISSED.** An evidentiary hearing is not warranted in this matter. A Judgment dismissing this action will be entered contemporaneously with this Order. Finding no substantial issue for appeal concerning the denial of a constitutional right

- 33 -

affecting the conviction, nor a debatable procedural ruling, a
certificate of appealability is not issued.

This the 25th day of September, 2015.

_____
United States District Judge